1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **SOUTHERN DISTRICT OF CALIFORNIA**
10

11   LISA MCCONNELL, INC.,                    Case No. 09-CV-00061-IEG (AJB)
12                          Plaintiff,        **ORDER:**
13          vs.                               **(1) GRANTING DEFENDANTS'**
                                              **MOTION TO DISMISS (Doc. No.**
14                                            **23); and**
15   IDEARC, INC., et al.,                    **(2) DENYING DEFENDANTS'**
                                              **MOTION TO STRIKE**
16                          Defendants.       **SUPPLEMENTAL BRIEFING**
                                              **(Doc. No. 35).**
17

18          Presently before the Court is Defendants Verizon Communications, Inc. and Verizon Yellow

19   Pages' motion to dismiss Plaintiff's Complaint. (Doc. No. 23.) Plaintiff filed an opposition and a

20   supplemental brief, and defendants filed a reply and a motion to strike the supplemental brief. (Doc.

21   No. 35.) After the Court granted Plaintiff's request at oral argument for jurisdictional discovery,

22   Plaintiff filed a supplemental opposition on the issue of personal jurisdiction and defendants filed a

23   reply.

24          For the reasons stated herein, the Court GRANTS Defendants' motion to dismiss for lack of

25   personal jurisdiction. Because Defendants have had the opportunity to respond to the issues raised

26   in Plaintiff's supplemental brief, the Court DENIES the motion to strike.

27   //

28   //

**FACTUAL BACKGROUND**

This case concerns Defendants' alleged unlawful use of graphic art created by Plaintiff Image One ("Plaintiff").  The following facts are taken from Plaintiff's Complaint unless otherwise noted.

Plaintiff, a California corporation with its principal place of business in San Diego, California, produces "high-end three-dimensional graphic art" which customers purchase for use in yellow pages advertising.  Plaintiff has secured copyright protection in approximately 451 art templates and individual advertisements.

Defendant Verizon Communications, Inc. ("VCI") is a Delaware corporation with its principal place of business in New York.  (Decl. of Jane A. Schapker in Supp. of Def.'s Mot. to Dismiss ¶ 2 ("Schapker Decl."))  On November 17, 2006, VCI spun off the subsidiaries that formally comprised its yellow pages operations (the "Verizon Subsidiaries").  The subsidiaries were spun off as independent publicly-owned companies and became Defendants Idearc, Inc., Idearc Media Corp., Idearc Media Sales West, Inc., and Idearc Media Services - West, Inc. (collectively, "Idearc").  Idearc has continued the same business of publishing yellow pages directories, with a licensing agreement to use the Verizon trademark on its directories.[1]

Upon reviewing a small sampling of the Verizon Subsidiaries' and Idearc's paper telephone directories and yellow pages websites for the years 2006, 2007, and 2008, Plaintiff found at least 12 advertisements that allegedly infringe on Plaintiff's copyrighted works (0.69 infringements per paper directory).  Extrapolating from that to the approximately 3,600 directories and websites published by Defendants during those years, Plaintiff estimates there are at least 2,400 infringements.

Previously, Plaintiff had filed a separate copyright infringement suit against the Verizon Subsidiaries, which resulted in confidential settlement agreements.  (Compl. ¶ 14.)  The subsidiaries took a temporary license from Plaintiff, allowing time to remove the infringing images.  Plaintiff alleges the license expired more than four years ago, and Defendants have continued to infringe or have resumed infringing.

---

[1] VCI does not own the trademark "Verizon"; rather it is owned by Verizon Trademark Services LLC, and is used by Idearc under license.  (Schapker Decl. ¶ 4.)

**PROCEDURAL HISTORY**

On January 13, 2009, Plaintiff filed the Complaint against Idearc, VCI, and Verizon Yellow Pages Company.  The Complaint sets forth six causes of action: (1) copyright infringement, 17 U.S.C. § 101, *et. seq.*; (2) vicarious copyright infringement; (3) contributory copyright infringement; (4) false designation of origin in violation of Lanham Act § 43(a); (5) unfair competition in violation of California Business and Professions Code § 17200; and (6) civil conspiracy.

On April 8, 2009, Idearc filed a notification of bankruptcy, resulting in an automatic stay. (Doc. No. 12.)

On September 8, 2009, VCI and Verizon Yellow Pages Company filed the instant motion to dismiss the Complaint for: (1) untimely service of process under Rule 4(m) of the Federal Rules of Civil Procedure, (2) lack of personal jurisdiction under Rule 12(b)(2), and (3) failure to state a claim under Rule 12(b)(6).  Plaintiff filed an opposition along with a Supplemental Brief, and Defendants filed a reply and a Motion to Strike the Supplemental Brief.

At oral argument on October 26, 2009, the Court granted Plaintiff's oral request for jurisdictional discovery and scheduled further briefing on the issue of personal jurisdiction. Plaintiff subsequently filed a supplemental opposition, and Defendants filed a reply.[2]

**DISCUSSION**

**I.      Verizon Yellow Pages Company**

As an initial matter, the Court grants Defendants' motion to dismiss as to Verizon Yellow Pages Company.  According to the Delaware Secretary of State's Certificate of Ownership and Merger, the corporation was merged into Verizon Information Services Inc. in 2003 and ceased to exist.  (Def.'s Mot. to Dismiss, Exhibit 1; Decl. of Theresa Murray in Supp. of Def.'s Mot. to Dismiss.)  Plaintiff admits it is no longer an active corporation.  (Compl. ¶ 4.)  Additionally, the allegations in the Complaint reach only as far back as 2006, well after the 2003 merger.

---

[2]In the supplemental opposition, Plaintiff makes additional requests for leave to amend its Complaint to remove the comma from Verizon Communications, Inc.'s name, and to substitute Verizon Services Corp. in place of Verizon Yellow Pages, wherever the latter is mentioned in the Complaint.  In light of the Court's determination that it does not have personal jurisdiction over VCI, Plaintiff's requests are denied.

1    **II.     Dismissal for Lack of Personal Jurisdiction under Rule 12(b)(2)**

2           A.     Legal Standard

3           Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may decide the issue

4    of personal jurisdiction on the basis of affidavits and documentary evidence submitted by the

5    parties or hold an evidentiary hearing[3] regarding the matter.  See Data Disc, Inc. v. Sys. Tech.

6    Ass'n., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977). Under either procedure, the plaintiff bears the

7    burden of demonstrating that jurisdiction is appropriate.  Bauman v. DaimlerChrysler Corp., 579

8    F.3d 1088 (9th Cir. 2009).  If the motion is based on affidavits and documentary evidence, the

9    plaintiff need only make a prima facie showing of facts establishing personal jurisdiction, "i.e.

10   facts that, if true would support the court's exercise of jurisdiction over the defendant."  Amini

11   Innovation Corp. v. JS Imports, Inc., 497 F. Supp. 2d 1093, 1100 (C.D. Cal. 2007).

12   Uncontroverted allegations in the complaint are accepted as true, Schwarzenegger v. Fred Martin

13   Motor Co., 374 F.3d 797, 800 (9th Cir. 2004), and conflicts between parties over statements

14   contained in affidavits must be resolved in the plaintiff's favor, Bauman, 579 F.3d at 1094.

15          B.     Analysis

16          VCI argues that Plaintiff's Complaint must be dismissed for lack of jurisdiction.  Plaintiff

17   responds there is both general and specific jurisdiction over VCI based on: (1) VCI's contacts with

18   California, and (2) imputing Idearc's and the Verizon Subsidiaries' California contacts to VCI.

19   After jurisdictional discovery, and upon consideration of the parties' affidavits and documentary

20   evidence, the Court finds Plaintiff has not made a prima facie showing of facts to support the

21   exercise of either general or specific jurisdiction over VCI.

22                 1.     Personal Jurisdiction

23          Personal jurisdiction over a nonresident defendant is tested by a two-part analysis: (1) the

24   exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute, and

25   (2) the exercise of jurisdiction must comport with federal due process.  Bauman, 579 F.3d at 1094.

26   Because California's long arm statute is coextensive with the limits of due process, the Court need

27   only consider the requirements of due process.  Id.  Due process requires that a nonresident

28          _____

                   [3] At such a preliminary hearing, the plaintiff must establish the jurisdictional facts by a
           preponderance of the evidence.  Data Disc., 557 F.2d at 1285.

1    defendant have "certain minimum contacts with the forum state so that the exercise of jurisdiction

2    does not offend traditional notions of fair play and substantial justice."  Id.  In addition to

3    establishing the requisite contacts, the assertion of jurisdiction must be found reasonable.  Id.  A

4    court may exercise either general or specific jurisdiction over a non-resident defendant.  Cybersell,

5    Inc. v. Cybersell, Inc., 130 F.3d 414, 416 (9th Cir. 1997) (citing Helicopteros Nacionales de

6    Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984)).

7                          2.          General Jurisdiction

8          A court may exercise general jurisdiction regardless of the connection between the cause of

9    action and the defendant's contacts with the forum state if the defendant's contacts are

10   "substantial, continuous, and systematic."  Yahoo! Inc. v. La Ligue Contre Le Racisme Et

11   L'Antisemitisme, 433 F.3d 1199, 1205 (9th Cir. 2006).  To establish general jurisdiction there

12   must be a high level of contacts with the forum state.  See Fields v. Sedgwick Associated Risks,

13   Ltd., 796 F.2d 299, 301 (9th Cir. 1986) ("[General personal jurisdiction] is a fairly high standard

14   in practice.").  Indeed, the defendant's contacts must be of the sort that  "approximate physical

15   presence." Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000).

16   For example, courts consider factors such as "whether the defendant makes sales, solicits or

17   engages in business in the state, serves the state's markets, designates an agent for service of

18   process, holds a license, or is incorporated there."  Id.

19         Here, VCI does not have such "substantial, continuous, and systematic" contacts to justify

20   the exercise of general jurisdiction.  According to the Declaration of Jane A. Schapker, Assistant

21   Corporate Secretary for VCI: (1) VCI is incorporated in Delaware, with its principal place of

22   business in New York; (2) it is not licensed to do business in California; (3) it does not maintain a

23   place of business in California; and (4) it has no assets, employees, or agents in California.

24   (Schapker Decl. ¶¶ 2, 3, 5, 8.)  Plaintiff does not dispute these facts.  VCI further contends that it is

25   merely a holding company and conducts no other business and provides no goods or services in

26   California.  (Schapker Decl. ¶¶ 3, 5.)

27         Plaintiff, on the other hand, argues that "Verizon's contacts with California are

28   exceptionally pervasive.  It is a matter of common knowledge that Verizon operates here."  Aside

from being conclusory, this statement oversimplifies Verizon's corporate structure.  As a general rule, a subsidiary and the parent are separate entities.  Plaintiff does not dispute the fact that VCI has numerous subsidiaries nationwide which use the trademark "Verizon" as part of their names. (Schapker Decl. ¶ 3.)  The only forum-related contact Plaintiff points to is a Purchase Agreement signed by VCI, Verizon Services Corp., and Idearc Media Corp on November 17, 2006, the date of the spin-off.  The agreement requires Idearc to publish directories "on behalf of" Verizon California Inc., among other regional Verizon subsidiaries.[4]  (Decl. of Teresa L. Polk in Supp. of Pl.'s Opp'n to Mot. to Dismiss ("Polk Decl."), Exhibit B.)  However, this contact alone is not so substantial as to "approximate physical presence" of VCI.

Conflicts between parties over statements contained in affidavits must be resolved in Plaintiff's favor.  But even assuming VCI is not merely a holding company, in the absence of any other forum-related contacts, Plaintiff has not met its burden of making a prima facie showing of forum-related contacts to support the exercise of general jurisdiction.

3.     Specific Jurisdiction

If a non-resident defendant's contacts are insufficient to justify general jurisdiction, a court may nevertheless exercise specific jurisdiction based on the relationship between the plaintiff's claims and defendant's forum-related contacts.  Bancroft & Masters, Inc., 223 F.3d at 1086.  The Ninth Circuit uses a three prong test: specific jurisdiction exists if (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable.  Id. The determination of whether plaintiff meets these factors is a factual question to be determined in each case.  Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica, 614 F.2d 1247, 1251 (9th Cir. 1980).  If the plaintiff succeeds in satisfying both of the first two prongs, the burden shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985).

//

---

[4]The Purchasing Agreement is discussed in greater detail in the following section on specific jurisdiction.

1

a.      Purposeful Availment

2      Under the first prong of the test, Plaintiff must establish that VCI either purposefully

3 availed itself of the privilege of conducting activities in California, or purposefully directed its

4 activities toward California.  "This focus upon the affirmative conduct of the defendant is designed

5 to ensure that the defendant is not haled into court as the result of random, fortuitous or attenuated

6 contacts, or on account of the unilateral activities of third parties."  Shute v. Carnival Cruise Lines,

7 897 F.2d 377, 381 (9th Cir. 1990).

8      The phrase "purposeful availment" is often used in shorthand fashion to include two

9 distinguishable concepts - purposeful availment and purposeful direction.  Schwarzenegger v. Fred

10 Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).  Purposeful availment, which generally

11 applies to contract claims, requires a showing that a defendant "purposefully availed himself of the

12 privilege of doing business in a forum state."  Id.  This typically consists of "evidence of the

13 defendant's actions in the forum, such as executing or performing a contract there."  Id.  By

14 contrast, under the purposeful direction standard, which generally applies to tort cases, it is not

15 necessary for the defendant to have direct contact with the forum state.  Id.  Rather, the

16 requirement can be satisfied by a showing that the defendant "purposefully directed his conduct

17 toward a forum state."  Id.   The first prong of the specific jurisdiction test may be satisfied under

18 either standard, or by some combination thereof.  Yahoo! Inc. v. La Ligue Contre Le Racisme Et

19 L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006).

20      Here, Plaintiff's claims for copyright infringement, false designation of origin, and unfair

21 competition sound in tort, rather than contract.  See Brayton Purcell LLP v. Recordon &

22 Recordon, 361 F. Supp. 2d 1135, 1140 (N.D. Cal. 2005) ("[I]t is undisputed that a claim for

23 copyright infringement sounds in tort, and therefore a purposeful direction analysis is

24 appropriate"); Amini Innovation Corp. v. JS Imports, Inc., 497 F. Supp. 2d 1093, 1102  1103 (C.D.

25 Cal. 2007) (applying the purposeful direction analysis in a copyright infringement action).  Thus,

26 the Court applies the purposeful direction analysis, also known as the effects test:

27          To meet the effects test, the defendant must have (1) committed an intentional act,
            which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of
28          which is suffered and which the defendant knows is likely to be suffered in the forum
            state. . . . [T]he [express aiming] requirement is satisfied when the defendant is

- 7 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.

Bancroft & Masters, Inc., 223 F.3d at 1087 (internal citation omitted).

Here, Plaintiff argues that "in contracting for the publication of telephone directories for California communities, VCI's actions were purposefully directed at this jurisdiction."  First, Plaintiff must make a prima facie showing of an intentional act by VCI.  Plaintiff has satisfied this requirement by submitting the Publishing Agreement signed by VCI.[7]  (Polk Decl., Exhibit B.) Second, Plaintiff must show VCI expressly aimed the act at the forum state - i.e., that VCI engaged in wrongful conduct targeted at Plaintiff and knew Plaintiff was a resident of California.[8]  Taking Plaintiff's allegations as true, Plaintiff has arguably satisfied this requirement.  Plaintiff alleges it previously filed a copyright infringement suit against the Verizon Subsidiaries, and Defendants have continued to infringe.  (Compl. ¶ 14.)  Based on the previous lawsuit, the Court can reasonably infer that VCI entered into the contract knowing of the alleged continued infringement and that VCI knew Plaintiff was a resident of California.  See Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc., 106 F.3d 284, 289 (9th Cir. 1997) (holding the purposeful availment requirement was satisfied where plaintiff alleged defendant willfully infringed plaintiff's copyrights and defendant knew plaintiff's principal place of business was in the forum state).  Finally, Plaintiff must show that VCI caused harm, the brunt of which is suffered and which VCI knows is likely to be suffered in California.  Because Plaintiff alleges it suffered harm in California and the Court can infer VCI knew Plaintiff was a California corporation, this requirement is satisfied.

Because this case sounds in tort, the Court would normally only consider whether VCI purposefully directed its activity towards California.  However, the Court notes that the terms of

---

[7]VCI argues that when a non-resident party enters into a contract as an agent for a disclosed principal, the resulting contacts are those of the disclosed principal. VCI contends it was acting as an agent for the telephone operating companies named in the agreement. Because it is unclear from the Purchasing Agreement whether VCI acted solely as an agent, the Court declines to address this argument.

[8]VCI argues that only "wrongful" conduct can provide the express aiming required by the standard.  However, the Ninth Circuit has clarified that "in any personal jurisdiction case we must evaluate all of a defendant's contacts with the forum state, whether or not those contacts involve wrongful activity by the defendant."  Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1207 (9th Cir. 2006).

the Publishing Agreement itself also weigh in favor of finding purposeful availment.  See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985) (noting that the mere existence of a contract with an effect in the forum state is not sufficient to warrant jurisdiction; rather, the court must consider factors including prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing).  Here, VCI entered into the Publishing Agreement with Idearc, a California corporation, for Idearc to publish directories on behalf of Verizon California, Inc.  VCI therefore intended to make California one of the places of performance of the contract.  In addition, by entering into a 30-year contract, VCI must have contemplated as a future consequence a long-term and continuing relationship with Idearc regarding its publishing obligations in California.

The Court therefore finds that the purposeful availment prong has been satisfied.

b.      Arising Out Of

However, Plaintiff fails on the second prong - that the claim arises out of or results from the defendant's forum-related activities. VCI argues that the alleged infringement did not arise out of the Purchase Agreement, VCI's only forum-related contact.  The Ninth Circuit employs a "but for" standard in analyzing whether a cause of action arises from forum-related contacts:

> The "but for" test is consistent with the basic function of the "arising out of" requirement - it preserves the essential distinction between general and specific jurisdiction. Under this test, a defendant cannot be haled into court for activities unrelated to the cause of action in the absence of a showing of substantial and continuous contacts sufficient to establish general jurisdiction. The "but for" test preserves the requirement that there be some nexus between the cause of action and the defendant's activities in the forum.

Shute v. Carnival Cruise Lines, 897 F.2d 377, 385 (9th Cir. 1990).  The Ninth Circuit has stated that "there is no reason why a tort cannot grow out of a contractual contact." Id. (holding the contractual contact was a "but for" causative factor for the tort since it brought the parties within tortious "striking distance" of one another").

In order to determine whether Plaintiff's tort claim arises out of its contractual contact, the Court must first determine what Idearc is required to do under the Publishing Agreement.  The issue is whether the agreement requires Idearc to publish yellow pages advertisements or directories which allegedly infringe Plaintiff's copyrights or in some way brings the parties within

tortious "striking distance" of one another.  Upon review of the Publishing Agreement, the Court finds that it does not require Idearc to publish the yellow pages advertisements or directories; rather, Idearc publishes these independently of VCI.  Section 3.1(a) of the Publishing Agreement requires Idearc to publish *white pages* directories for Verizon subsidiaries,[9] but only requires Idearc to publish a "Courtesy Classified Listing" in the *applicable yellow pages* "to the extent it is a Legal Requirement."[10]  (Polk Decl., Exhibit B, § 3.1(a).)  A "Courtesy Classified Listing" is defined in Section 1.2 as "one appearance of a business Subscriber's name, address and business telephone number in the classified section of the Yellow Pages."

The liability and indemnification clauses in the Publishing Agreement further support VCI's contention that Idearc only publishes primary listing information in the "applicable yellow pages" pursuant to the agreement.  Section 5.2 provides that claims regarding advertising in Idearc's directories shall be referred to Idearc.  Section 5.3 provides that Idearc shall assume responsibility for and advance the cost of any claims relating to advertising, while VCI shall assume responsibility for defending claims relating to Verizon Subscriber listings.  Section 5.4(a) provides that Idearc shall indemnify VCI for losses relating to listing[11] or advertising, unless caused by Verizon, and any claims for violation of intellectual property rights.  Finally, Section 3.7 provides that the intellectual property rights in the directories are the property of Idearc, unless they are submitted "by or for Verizon or created at the request of Verizon."

In sum, the Publishing Agreement itself supports VCI's contention that the alleged infringement did not arise out of the agreement.  Plaintiff fails to produce any affidavits or other

---

[9]These subsidiaries are telephone operating companies, which issue telephone numbers to customers and are subject to legal requirements to publish directories containing listing information for their customers.

[10]VCI argues in its reply that it is not a legal requirement in California to provide yellow pages to residential subscribers.  Because VCI does not submit any supporting documentation, the Court does not consider this argument.

[11]Section 5.4(b) clarifies that VCI shall indemnify Idearc for claims as a result of any error or omission in listings in White Pages directories to the extent VCI would suffer liability if it had published the directory and used the same listing information, unless arising out of Idearc's own negligence or misconduct.

documentary evidence to controvert VCI's contention that Idearc publishes yellow pages advertisements and directories independently of VCI.[12]

Because Plaintiff has failed to make a prima facie showing that the claim arose out of VCI's only forum-related contact, the Court need not reach the final prong of the personal jurisdiction analysis - whether the exercise of jurisdiction over VCI would be reasonable.  The Court concludes that Plaintiff has not met its burden of making a prima facie showing of facts to support the exercise of specific jurisdiction over VCI.

4.      Jurisdiction Based on Imputing Contacts to VCI

VCI's remaining potential contacts with California are based on the activities of the Verizon Subsidiaries prior to the spin off and Idearc after the spin off.  Plaintiff argues that the Court can impute their contacts to VCI on an alter ego or agency theory.[13]  VCI does not dispute that these companies have sufficient minimum contacts, but argues that Plaintiff does not allege facts to support either theory.

a.      Agency

"For purposes of personal jurisdiction, the actions of an agent are attributable to the principal."  Sher v. Johnson, 911 F.2d 1357 (9th Cir. 1990).  The Ninth Circuit has held that a high degree of control is necessary to confer agency jurisdiction.  Bauman v. DaimlerChrysler Corp., 579 F.3d 1088, 1096 (9th Cir. 2009).

With respect to Idearc, Plaintiff fails to make a prima facie showing that VCI had the requisite high degree of control over Idearc's publishing operations.  In fact, the Purchasing Agreement expressly provides that the agreement shall not be deemed or construed to constitute an agency relationship between VCI and Idearc.  (Polk Decl., Exhibit B, § 9.3.)  Therefore, Idearc's contacts cannot be imputed to VCI.

---

[12]Plaintiff points to several requirements in the Purchasing Agreement - for example, that VCI and Idearc  must cooperate with each other in lawsuits relating to advertising and that Idearc cannot compete with VCI in the publishing of White Pages or Yellow Pages - but neither of these, nor the other provisions Plaintiff cites to, indicate that Idearc publishes yellow pages directories or advertisements pursuant to the Purchase Agreement.

[13]Plaintiff raised this argument in its opposition but does not argue these theories in its supplemental opposition after conducting jurisdictional discovery.  Nevertheless, the Court addresses both theories.

With respect to the Verizon Subsidiaries, it is well established that the existence of a parent-subsidiary relationship alone is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with the forum.  See Bauman, 579 F.3d at 1094-95.  To impute the subsidiaries' contacts to the parent on an agency theory, the parent must exert control that is "so pervasive and continual that the subsidiary may be considered an agent or instrumentality of the parent, notwithstanding the maintenance of corporate formalities" Id. at 1088.   In addition, the subsidiary must be "sufficiently important to the parent corporation that if it did not have a representative, the parent corporation would undertake to perform substantially similar services."  Id.

Because Plaintiff's factual allegations are nonexistent as to VCI's control over the Verizon Subsidiaries, Plaintiff fails as to the first prong.  For example, Plaintiff does not allege that VCI was involved in forming business policy or strategy, provided financing, or maintained overlapping directors and officers.  According to VCI, it observes all corporate formalities, including having its own board of directors and its own officers.  (Schapker Decla. ¶ 7.)  VCI pays none of the salaries of its subsidiaries' employees.  Id.   All of VCI's operating subsidiaries operate with sufficient access to capital to conduct their day-to-day operations.  Id.  Furthermore, VCI does not direct its subsidiaries nor does it make any decisions for or on behalf of its subsidiaries.  Id.  Plaintiff also fails the second prong.  Plaintiff has not alleged sufficient facts for the Court to determine whether yellow pages publishing operations are sufficiently important to VCI that without the Verizon Subsidiaries, VCI would undertake to publish its own yellow pages.  To the contrary, since VCI spun off the Verizon Subsidiaries in 2006, it has not undertaken to publish yellow pages itself.

Accordingly, neither the contacts of the Verizon Subsidiaries nor Idearc can be imputed to VCI on an agency theory.

           b.     Alter Ego

Plaintiff also fails to allege facts to support its argument that the Verizon Subsidiaries or Idearc acted as VCI's alter ego.  The alter ego test consists of two parts.  First, there must be such unity of interest and ownership that the separate personalities of the two entities no longer exist.

1   Harris Rutsky & Co. Ins. Servs, Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1134 (9th Cir. 2003).

2   With respect to a parent-subsidiary relationship, the parent must control the subsidiary to such a

3   degree as to render the latter the mere instrumentality of the former.  Id.  Second, failure to

4   disregard their separate identities would result in fraud or injustice.  Id.  The alter ego test is

5   demanding.  See Kramer Motors, Inc. v. British Leyland, Ltd., 628 F.2d 1175, 1177 (9th Cir.

6   1980) (finding no alter ego relationship where the parent guaranteed loans for the subsidiary,

7   reviewed and approved major decisions, placed several of its directors on the subsidiary's board,

8   and was closely involved in the subsidiary's pricing decisions).

9       Because Plaintiff does not allege any facts probative of the issue of unity of interest and

10  ownership, Plaintiff fails as to the first prong.  Plaintiff does not present sufficient evidence of

11  control, nor does Plaintiff allege there was commingling, improper use of corporate funds, or lack

12  of corporate formalities. Plaintiff also fails as to the second prong.  Plaintiff argues that failure to

13  disregard VCI and Idearc's separate identities would result in fraud or injustice because VCI spun-

14  off its yellow pages publishing operations in order to insulate itself from liability.  Plaintiff points

15  to several documents relating to the 2006 spin-off, contending that they demonstrate Idearc was

16  undercapitalized.[14]  (Pl.'s Suppl. Brief, Exhibits 1-4.)  Even assuming these documents indicate

_____

17      [14]In support of this allegation, Plaintiff points to the Exchange Agreement between VCI and
Idearc Inc. under which Plaintiff claims that VCI "transferred to the Investment Entities the IDEARC
18  debt obligations in exchange for certain debt obligations of VERIZON held by the Investment
Entities."(Pl.'s Suppl. Brief, Exhibit 2.) Plaintiff also cites two paragraphs from an SEC Form 8-K
19  describing the spin-off:

20          On November 17, 2006 (The "Distribution Date") Verizon Communications Inc.
            ("Verizon") spun off the companies that comprised its domestic print and Internet
21          yellow pages directories publishing operations.  In connection with the spin-off,
            Verizon transferred to Idearc Inc. ("Idearc") all of its ownership interest in Idearc
22          Information Services LLC and other assets, liabilities, businesses and employees
            primarily related to Verizon's domestic print and Internet yellow pages and
23          directories publishing operations ("the Contribution").  The spin-off was completed
            by making a pro rata distribution to Verizon's shareholders of all the outstanding
24          shares of common stock of Idearc.

25          In connection with the spin-off, on the Distribution Date, and in consideration for the
            Contribution, Idearc (1) issued to Verizon additional shares of Idearc common stock,
26          (2) issued to Verizon $2.8 billion aggregate principal amount of Idearc's 8% senior
            notes due 2016 and $4.3 billion aggregate principal amount of Idearc's principal
27          amount of loans under Idearc's tranche B term loan facility (collectively, the "Idearc
            Obligations") and (3) transferred to Verizon approximately $2.4 billion in cash from
28          cash on hand, from the proceeds of loans under Idearc's tranche A term loan facility
            and from the proceeds of the remaining portion of the loans under Idearc's tranche
            B term loan facility.

1   Idearc was undercapitalized, undercapitalization alone is not per se sufficient grounds for alter ego

2   liability.  Harris v. Curtis, 8 Cal. App. 3d 837, 841 (Ct. App. Cal. 1970) (noting that being

3   underfinanced is a condition not uncommon among new small businesses).  Rather,

4   "undercapitalization is a 'factor' to be considered, along with all other factors present in the case."

5   Id. at 843.

6          Because Plaintiff fails on the first prong and because no other factors support Plaintiff's

7   theory, the Court finds Plaintiff has not made a prima facie case that either the Verizon

8   Subsidiaries or Idearc were alter egos of VCI.  Accordingly, their contacts cannot be imputed to

9   VCI.

10                                    **CONCLUSION**

11         Because the Court has no personal jurisdiction over VCI, the Court declines to address

12  Defendants' Rule 4(m), Rule 12(b)(6), and venue arguments.  It is HEREBY ORDERED:

13  (1)     Defendant's motion to strike Plaintiff's Supplemental Brief is DENIED;

14  (2)     Defendants'  motion to dismiss as to Defendant Verizon Yellow Pages Company is

15  GRANTED; and

16  (3)     Defendants' motion to dismiss for lack of personal jurisdiction as to Defendant Verizon

17  Communications, Inc. is GRANTED.

18         This order of dismissal is without prejudice to Plaintiff's filing of the Complaint in an

19  appropriate court within 30 days of the filing of this order.

20         **IT IS SO ORDERED.**

21

22  **DATED:  January 22, 2010**

23                                    _____
                                      **IRMA E. GONZÁLEZ, Chief Judge**
24                                    **United States District Court**

25

26

27

28  _____
    (Pl.'s Suppl. Brief, Exhibit 1.)